[No. 29986.   Department One.   November 29, 1946.]

PUGET SOUND BRIDGE & DREDGING COMPANY *et al.*, *Appellants*,
v. THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent.*[1]

[1]Reported in 174 P. (2d) 957.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Thomas D. Kelley,* for appellants.

*The Attorney General, Phil H. Gallagher* and *Harry L. Parr, Assistants,* for respondent.

JEFFERS, J.—This is an appeal by Puget Sound Bridge & Dredging Company, a corporation, and Lake Union Dry Dock & Machine Works, a corporation, doing business as Associated Shipbuilders, from a judgment made and entered by the superior court for King county on April 6, 1946, which judgment purports to affirm an order of the joint board of the department of labor and industries made and entered February 19, 1945.

During World War II, the two corporations above named jointly carried on a shipbuilding operation on Harbor Island, Seattle, Washington, on what is known as West Waterway. The operation was conducted under the name of Associated Shipbuilders, and an account was carried with the department of labor and industries under the latter name.

All of the graving docks and shipbuilding ways are located upon West Waterway, and are so situated that the vessels constructed may be launched in the water in West Waterway. All outfitting docks and other similar operations are also located upon West Waterway.

At a considerable distance east of West Waterway, and running parallel to it, is a public street of Seattle, known as Sixteenth avenue southwest. Immediately bordering Sixteenth avenue on the west side are two office buildings in which various office and clerical employees of Associated Shipbuilders do the necessary office work.

It appears from the testimony and from petitioner-appellant's exhibit No. 1 that the office buildings above mentioned are about a block from the ship construction operations, although there is a storage place for jigs, slabs, etc., about 105 feet west of the office buildings.

Prior to the war, the office employees of Puget Sound Bridge & Dredging Company entered their offices through an entrance directly from Sixteenth avenue. During the war, the United States navy was in control of these opera-

tions and, as a security measure, erected, or required appellant to erect, a seven-foot wire mesh fence around the entire area west of Sixteenth avenue, including within the fence the two office buildings. The navy required that all clerical and office employees of appellant enter through a control gate, located close to the office buildings, in order that they might be scrutinized and their credentials checked. After passing through the gate, the clerical and office employees went directly to their office buildings.

These office buildings are completely detached from any structure in which shipbuilding, warehousing, or allied operations are conducted, and, with the exception of certain engineers, the office buildings are occupied only by the office and clerical staff.

The Associated Builders account with the department was No. 106,876, and thereunder the operation was classified as extrahazardous work. Appellant had always considered, and apparently the department had also considered, that appellant's office and clerical employees were completely removed from the scene of any machine activity or shipbuilding operation, until the fence hereinabove referred to was constructed. However, appellant has at all times reported to the department that certain office employees, to wit, time checkers, yard checkers, certain engineers, yard office clerks, and all others whose duties required that they go out into the yard, were engaged in extrahazardous work under Rem. Rev. Stat. (Sup.), § 7676, subclass 49-4 [P.P.C. § 717-1], which provides:

"Office employees of employers subject to the compulsory provisions of law and whose employment duties require exposure to extra-hazardous operations being conducted by employer."

The office employees who were required to go out into the yard were given a special badge, and only such office employees could obtain entrance to the yard operations.

The remaining office employees, those with whom we are here concerned, such as stenographers, secretaries, accountants, bookkeepers, and filing clerks, who had no occasion to go into the shipbuilding yard, and who in fact were not

permitted into such area, were not, prior to August 2, 1944, reported by appellant to the department as engaged in extrahazardous work.

On August 2, 1944, Mr. Bradshaw, auditor for the department, wrote appellant a letter, from which we quote:

"Re: Firm No. 106, 876

"In submitting reports to this Department your firm has included under class 49-4, those office employees whose duties require that they go out into the yard where ship construction operations are conducted.

"In view of the fact the office is located within the premises of the yard, being inside the fence enclosing the yard, we are of the opinion that all of the office employees are subject to the compulsory provisions of the Workmen's Compensation Act and are to be reported under class 49-4. We are, therefore, requesting that you report the time of all office employees, starting June 1, 1944. As your June report has been filed, it will be necessary that you forward a supplemental report for that month covering the time of the employees who were not included on the original report."

Appellant, being of the opinion that its office and clerical employees whose duties were confined entirely to the office buildings should not be so classified, appealed to the joint board. The joint board granted appellant's application for a rehearing and, on February 19, 1945, after a hearing, entered its order sustaining the supervisor's action of August 2, 1944.

The only question determined by the joint board was that appellant's office employees last above referred to should be reported and classified under Rem. Rev. Stat. (Sup.), § 7676, subclass 49-4.

An appeal was taken by appellant from the order of the joint board to the superior court for King county, and thereafter, on April 6, 1946, the superior court made and entered its judgment affirming the action of the joint board and dismissing appellant's appeal. An appeal to this court was taken by appellant from the judgment of the superior court.

Appellant makes nine assignments of error. However, appellant in its brief states the question presented on this appeal to be as follows:

"This appeal presents primarily one question. Are office employees of a shipbuilder who enter the office building directly from the personnel gate and who do not enter the shipbuilding yards, which are located some distance from the office buildings, properly classified by the supervisor of the department of labor and industries as engaged in an extrahazardous occupation, because the United States navy, as a war measure, erected a wire fence around the entire neighborhood, including both the shipyard operations and the office building?"

While, as hereinbefore stated, the trial court affirmed the order of the joint board, it seems apparent from its memorandum opinion that the court was of the opinion the office employees, with whom we are here concerned, should have been reported and classified under Rem. Rev. Stat. (Sup.), § 7676, class 9, for in the memorandum opinion the court set out class 9, which provides:

"9-1  Boat building (steel hulls)............
        Shipbuilding (steel hulls, includes all
            operations within shipyards)......
"9-2  Boat building (wooden hulls)..........
        Shipbuilding (wooden hulls, includes all
            operations within shipyard)......
"9-4  Ferries, steamboats, tugs (operations)."

The memorandum opinion thereafter contains the following statement:

"It is the view of the court that while the responsibility of making the original report rests upon the employer, he could not, with due regard to the requirements of the legislative act, omit from his report the name of any persons engaged in the shipyard itself when confronted by the declaration of the statute *'Includes all operations within the shipyard.'*" (Italics ours.)

■ We are somewhat at a loss to understand how the trial court could affirm the action of the joint board, which in effect held that the supervisor correctly classified these office employees under subclass 49-4, *supra,* when the court seemed to be of the opinion they came within the provisions of class 9, *supra.* The question of whether or not these office employees of appellant should be classified under class 9 was not before the joint board, and therefore could not be

considered by the trial court or this court, in so far as any determination that they should be classified under class 9 is concerned. See *Harrington v. Department of Labor & Industries,* 9 Wn. (2d) 1, 113 P. (2d) 518; *Leary v. Department of Labor & Industries,* 18 Wn. (2d) 532, 140 P. (2d) 292; *Merchant v. Department of Labor & Industries,* 24 Wn. (2d) 410, 165 P. (2d) 661.

The material facts in the instant case are not in dispute. The parties differ, however, as to the conclusions to be drawn from the facts and as to the applicability of the statute.

■ In such a situation, the rule that the decision of the joint board shall be presumed to be *prima facie* correct does not apply on appeal to the courts. *Parker v. Department of Labor & Industries,* 14 Wn. (2d) 481, 128 P. (2d) 497.

The department, in its brief, also refers to and quotes the provisions of class 9, *supra,* and thereafter states: "Office employees are not excluded under classification 9-1." Again, on page 22 of its brief, the department states:

"It seems plain that the legislature considered all employees of a shipbuilding operation as being exposed to the risks of the industry when it specifically included *all operations within the shipyard* under the act [the italics being part of the provisions of class 9]."

In view of the statement in the department's brief, again it is difficult to understand why the department classified these office employees as coming under the provisions of subclass 49-4. In view of the fact that the joint board decided only that they should be classified under subclass 49-4, the lower court could not, nor can we, decide that they should ultimately be classified under subclass 9-1 or 9-2, *supra.* Nevertheless, the provisions of class 9 are indirectly in issue, for if we should conclude that class 9 is the only classification under which office employees of concerns engaged in shipbuilding could be classified, excluding a classification under subclass 49-4, then it would follow that the department erred in classifying these employees under subclass 49-4, but the ultimate question of whether or not

these particular office employees would come under class 9 is a question which would have to be determined at some later date by the department.

It might be argued that, the department having classified these office workers under subclass 49-4, an administrative interpretation of an ambiguous statute should be given considerable weight; but it does not appear that any such administrative interpretation has been followed for such length of time as to acquire weight as a precedent. See *Rumsey v. Department of Labor & Industries,* 192 Wash. 538, 74 P. (2d) 214.

Class 9 of Rem. Rev. Stat., § 7676(a), was established by chapter 104, p. 297, Laws of 1931. It contained four subdivisions, namely, 9-1, 9-2, 9-3, and 9-4. Subclass 9-1 referred to ship or boat building (steel hulls), and repair work on steel vessels (included all operations *incidental to this industry within shipyard*). Subclass 9-2 referred to ship or boat building (wooden hulls), and repair work on wooden vessels (included all operations within shipyard). Subclass 9-3 referred to ship or boat building (concrete hulls) and repair work on concrete vessels (included all operations within shipyard). Subclass 9-4 referred to steamboats, tugs, ferries (operation). There was no provision in Rem. Rev. Stat., § 7676(a), that corresponds to subclass 49-4.

By chapter 193, Laws of 1933, chapter 104, Laws of 1931, was amended, and by this amendment, class 9 was changed to the extent of eliminating subclass 9-3, relating to concrete hulls, and changing the words "includes all operations incidental to this industry within shipyard," which were a part of subclass 9-1, to read "includes all operations within shipyard."

While we assume appellant was engaged in the construction of steel hulls, it is apparent that, after the 1933 amendment, the provisions of subclasses 9-1 and 9-2 were the same, except as to the type of hulls.

The provisions of class 9 have not been changed since the amendment of 1933, and will be found in Rem. Rev. Stat. (Sup.), § 7676, class 9.

Subclass 49-4 was, for the first time, provided for by chapter 138, Laws of 1939.

Class 48 of Rem. Rev. Stat. (Sup.), § 7676, is an elective provision for certain persons whose duties do not require them to be subject to extrahazardous operations, and subclass 48-1 covers caretakers (N.O.S.), clerks (N.O.S.), janitors, and office employees (N.O.S.). Under this last provision, the elective adoption as to office employees applies only when and if such office employees are not covered by any other class.

It is apparent, we think, that subclass 9-1, as found in § 7676(a), *supra,* was broad enough to embrace office employees of shipyards, in so far as they performed work which was incidental to the industry within the shipyard. We think it is also apparent that subclass 9-1, in its application to persons who were not actually engaged in shipbuilding, was broadened by chapter 193, Laws of 1933, when the provisions of that subclass were changed to *include all operations within shipyard.*

That the word "operations" does not necessarily exclude office workers clearly appears from what was stated by this court in *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395.

We are, then, confronted with the question of whether or not it was the intention of the legislature, in enacting into law subclass 49-4, in 1939, to take away the possible classification of shipyard office employees already existing under subclasses 9-1 and 9-2, *supra,* and make them subject to classification under subclass 49-4.

Whether or not the provisions of subclasses 9-1 and 9-2 are broader than the provisions of subclass 49-4, as applied to office employees of an employer subject to the compulsory provisions of the workmen's compensation act, might be a difficult question to answer; however, it seems to us that the provisions of subclasses 9-1 and 9-2 are so broad that it does not appear to us that it was the intention of the legislature, by the enactment of subclass 49-4, to in effect repeal by implication subclasses 9-1 and 9-2, as applied to office employees of shipyards. In other words, we are of the opinion

that, if the particular office employees here involved are subject to classification at all, they can be classified only under Rem. Rev. Stat. (Sup.), § 7676, subclasses 9-1 and 9-2, depending on whether appellant is engaged in constructing steel hulls or wooden hulls, and not under Rem. Rev. Stat. (Sup.), § 7676, subclass 49-4.

We are further of the opinion that subclass 49-4 is applicable only to such office employees of an employer subject to the compulsory provisions of the act as are not covered by some other specific classification.

The question of whether or not the particular facts in this case would justify a classification of the office employees here involved under subclass 9-1 or 9-2 not having been considered by the joint board, that question could not be determined by the trial court, and cannot, in this proceeding, be determined by this court.

For the reasons herein assigned, the judgment of the trial court must be, and it is hereby, reversed, with directions to dismiss this action, without prejudice, however, to any future action by the department relative to the classification of these office employees not inconsistent herewith.

Appellant will recover its costs in this court.

MILLARD, C. J., STEINERT, ROBINSON, and SCHWELLENBACH, JJ., concur.