937 P.2d 565 (1997)
132 Wash.2d 162
Marie KINGERY, Widow of Willard J. Kingery, Deceased, Petitioner,
v.
DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, Respondent.
No. 64035-1.
Supreme Court of Washington, En Banc.
Argued October 24, 1996.
Decided May 22, 1997.
Reconsideration Denied July 22, 1997.
*566 Gordon, Thomas & Honeywell, Joseph H. Gordon, Jr., Tacoma, for petitioner.
Christine Gregoire, Attorney General, Maureen A. Mannix, Asst., John R. Wasberg, Asst., Beverly Goetz, Asst., Seattle, for respondent.
TALMADGE, Justice.
Marie Kingery seeks vacation of an unappealed 1983 Department of Labor and Industries (Department) order denying her widow benefits for her husband's on-the-job death. *567 She seeks equitable relief in court eight years after issuance of the Department's original order, upon discovery of new evidence regarding the cause of her husband's death.
Mrs. Kingery's failure to timely appeal the 1983 order precludes her from re-arguing the same claim unless the order was void when entered. Because the order was not void when it was entered and she has not demonstrated equitable grounds for otherwise excusing her failure to appeal the 1983 order, we affirm the Court of Appeals' decision and uphold the decision of the Department and the Board of Industrial Insurance Appeals (Board) denying her benefits.

ISSUES
1. Does Title 51 RCW confer authority on the Department, Board, or superior court to set aside an unappealed Department order?
2. If the authority to set aside an unappealed Department order exists, should it be exercised where the claimant, dissatisfied with the Department's denial of widow's benefits to her, asserts her claim eight years after her husband's death on the basis of new evidence?

FACTS
On August 22, 1983, Willard J. Kingery died at work in the course of his employment with Boyd Zepp Logging Company while operating a road grader. He was found at the work site under one of the grader wheels with massive head, neck and chest injuries. He was survived by his widow, Marie Kingery.
At the direction of John Bebich, the Grays Harbor County Coroner, an autopsy was performed on Mr. Kingery by Dr. Robert Addison. On August 31, 1983, Mrs. Kingery filed her initial claim for widow's benefits with the Department. Dr. Addison issued his report on September 12, 1983, concluding Mr. Kingery had died of an acute myocardial infarction (heart attack) with head, neck and chest injuries occurring post-mortem when he fell out of the grader, landing under one of the wheels.[1] The Department rejected Mrs. Kingery's claim for widow's benefits because her husband's death was due to natural causes, not an industrial injury. The Department order denying benefits included a notice she had 60 days to appeal the order.
Mrs. Kingery, through her attorney, filed a timely request for reconsideration with the Department, but the Department issued an order affirming its earlier denial order. This order again included a notice Mrs. Kingery had 60 days to appeal. Mrs. Kingery's attorney then withdrew, indicating she would have to handle any appeal to the Board on her own. Mrs. Kingery did not appeal either order to the Board within 60 days and she requested no further action of the Department for eight years.
The record indicates divergent reasons for Mrs. Kingery's failure to seek further Department action for eight years. Her declaration indicates she believed her husband's workplace injuries caused his death and she allegedly made repeated requests to the coroner's office for a copy of the autopsy report around the time of the Department's denial of benefits to her in October 1983. That office refused her requests, allegedly on the grounds the report was "too gory" and she would not understand it. Board Record (BR) at 112-13.[2] On several occasions, she also attempted to obtain other legal representation, without success. She asserts she *568 contacted the office of Congressman Al Swift in 1990 and asked him to assist her in getting a copy of the autopsy report. With his intervention, she states she was finally able to get a copy of the report from the coroner in February 1990.
On the other hand, Coroner Bebich's declaration indicates a hiatus in the case between 1983, when he signed Mr. Kingery's death certificate, and February 1990, when he received Mrs. Kingery's request for the autopsy report, which he promptly honored. There is no indication intervention by Representative Swift's office ever occurred, or was needed.
After receiving the report in February 1990, Mrs. Kingery asked Bebich in May 1991 to reopen the investigation on her husband's death, which he promptly agreed to do. Bebich sent the autopsy records to medical examiners Dr. William J. Brady of Portland and Dr. Emmanuel Q. Lacsina of Tacoma, who concluded Mr. Kingery had not died of a heart attack, but rather from his head, neck and chest injuries.[3]
Bebich informed Mrs. Kingery of the results of these reviews in August 1991 and also submitted an affidavit to the Department of Health, requesting correction of Mr. Kingery's death certificate. The Department of Health issued a corrected certificate on July 31, 1992, stating the true cause of Mr. Kingery's death was his industrial injury.
On November 4, 1991, Mrs. Kingery reapplied for widow's benefits, but the Department denied reconsideration of its 1983 denial order for lack of jurisdiction since the protest was not received within the statutory time limitations and the 1983 order was final and binding. Mrs. Kingery then appealed to the Board.
Both Mrs. Kingery and the Department sought summary disposition of the case. In a Proposed Decision and Order, the Board's industrial appeals judge affirmed the Department's 1991 order, concluding neither the Department nor the Board had subject matter jurisdiction because the Department's 1983 denial order was final and binding. The Proposed Decision and Order also noted the Board did not have jurisdiction to consider Mrs. Kingery's appeal because it was brought beyond the one-year time limitation imposed by CR 60(b)(3) which deals with "newly discovered evidence." BR at 17-31. Mrs. Kingery filed a Petition for Review to the Board on January 13, 1993, asserting CR 60(b)(3), CR 60(b)(11), and CR 60(c) as grounds for relief, but the full Board denied the Petition.
Mrs. Kingery then appealed to Grays Harbor County Superior Court and moved for summary judgment, contending she was entitled to relief under CR 60(b)(11) or CR 60(c). Upon motions by Mrs. Kingery and the Department, the trial court, the Honorable Gordon Godfrey, entered an order granting Mrs. Kingery's motion, denying the Department's motion, vacating the Department's 1983 order, and remanding the case to the Department for a determination on the merits, from which the Department timely appealed. Division Two of the Court of Appeals reversed the trial court's order. Kingery v. Department of Labor & Indus., 80 Wash.App. 704, 910 P.2d 1325(1996). We granted review.

ANALYSIS
A. Title 51 Affords No Remedy to Mrs. Kingery
Washington's Industrial Insurance Act (the Act) withdraws all cases involving industrial injuries from the jurisdiction of the courts, except as provided in Title 51 RCW.[4] *569 In exchange for the payment of premiums to the State Fund or compliance with self-insurance standards, employers may not be sued in court. RCW 51.04.010; RCW 51.32.010. In return, injured workers receive a swift, certain no-fault remedy enforced in an administrative process established in the Act. In an average year, 180,000 claims are filed with the Department, which initially handles those claims.
The Act provides finality to decisions of the Department. An unappealed Department order is res judicata as to the issues encompassed within the terms of the order, absent fraud in the entry of the order, as we stated in Abraham v. Department of Labor & Indus., 178 Wash. 160, 34 P.2d 457 (1934):
Under the express terms of statutory law and in accord with its beneficial purposes, the department has original and exclusive jurisdiction, in all cases where claims are presented, to determine the mixed question of law and fact as to whether a compensable injury has occurred. It is as much its duty in each case to determine whether the workman was within the protection of the act at the time of the injury as it is to determine the fact of injury and extent thereof. The facts as to the nature of the employment are a vital part of each inquiry, and must necessarily be determined before a result can be reached allowing the claim.
Since the Department is the original and sole tribunal with power to so determine the facts, and its findings are reviewable only on appeal, it must follow that a judgment by it, resting upon a finding of fact that the workman was so employed at the time of injury as to be within the act, is final and conclusive upon the department and upon the claimant, unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened. Even in such cases, it would seem that the department would necessarily have to appeal to equity and give opportunity for a full inquiry before its judgment could be vacated.
Abraham, 178 Wash. at 163, 34 P.2d 457.
The most recent case on the finality of unappealed Department orders is Marley v. Department of Labor & Indus., 125 Wash.2d 533, 886 P.2d 189 (1994), decided after the trial court's December 10, 1993 order here. In Marley, the claimant sought to overturn an unappealed Department order six years after she was denied benefits, alleging an error of law in the decision. We held her failure to appeal within the required 60 days precluded her from raising the issue, even where the decision by the Department may have been wrong; an erroneous decision by the Department which was not timely appealed is final and binding on all parties, and cannot be reargued by a claimant. Marley, 125 Wash.2d at 542-43, 886 P.2d 189.
Marley stands for the broad proposition that where an aggrieved party has not appealed a final Department order deciding an industrial claim within the 60-day time period of RCW 51.52.050 and .060, that party is precluded from rearguing the same claim unless the order was void when entered. In Marley, we explained a Department order is not void unless the Department lacked personal jurisdiction over the parties or subject matter jurisdiction over the claim. The Department has broad subject matter jurisdiction to decide all claims for workers compensation benefits. Id. at 539, 886 P.2d 189. Where the Department has both personal and subject matter jurisdiction over the claim, even an error in the Department's unappealed order does not render it void. Id. at 542-43, 886 P.2d 189.
Under the system for handling industrial claims and the principles enunciated in Marley, the Department has exceedingly *570 limited authority to set aside its own unappealed orders. The Department may set aside an order if it was void ab initio, that is, if it lacked either personal jurisdiction over the parties or subject matter jurisdiction over the claim. Mrs. Kingery has asserted an erroneous adjudication, like the claimant in Marley, not that the Department lacked personal or subject matter jurisdiction.
Moreover, Mrs. Kingery points to no other basis for allowing the Department to exercise authority to set aside unappealed final orders. While the Department is authorized to handle claims, the only statutory authority the Department has under Title 51 to correct its own errors is RCW 51.32.240, which is not applicable here as it regards recoupment of payments made pursuant to erroneous orders under certain circumstances and only if corrected within one year of payment. RCW 51.32.240. In several of the subsections of RCW 51.32.240, the Legislature conferred equitable authority upon the Department:
The director, pursuant to rules adopted in accordance with the procedures provided in the administrative procedure act, chapter 34.05 RCW, may exercise his discretion to waive, in whole or in part, the amount of any such timely claim where the recovery would be against equity and good conscience.
See RCW 51.32.240(1)(3). This language indicates the Legislature knows how to permit equitable relief if needed. The Legislature could confer statutory authority on the Department to grant relief in cases like Mrs. Kingery's. It has not done so. Thus, the Department did not have authority to set aside the unappealed 1983 Department denial order.
Similarly, under Title 51 RCW, neither the Board nor the courts have the authority to overturn an unappealed final order of the Department, given the role of the Board and the courts under the Act. If aggrieved by the Department's decision, the parties appeal to the Board and later the courts, but the Act provides that both the Board and the superior court serve a purely appellate function. RCW 51.52.060 and .115. The Board's appellate authority is strictly limited to reviewing the specific Department action. The Board hears appeals de novo. RCW 51.52.100. The superior court reviews the Board action on the Board's record. See Hanquet v. Department of Labor & Indus., 75 Wash.App. 657, 661-64, 879 P.2d 326 (1994), review denied, 125 Wash.2d 1019, 890 P.2d 20 (1995). See also Perry v. Department of Labor & Indus., 48 Wash.2d 205, 210, 292 P.2d 366 (1956) (where no appeal was taken from an order of the Department awarding compensation to a worker, both the Board and the superior court lacked jurisdiction to hear appeals from that order); Lenk v. Department of Labor & Indus., 3 Wash.App. 977, 982, 478 P.2d 761 (1970) (if a question is not passed upon by the Department, it cannot be reviewed by either the Board or the superior court); Brakus v. Department of Labor & Indus., 48 Wash.2d 218, 223, 292 P.2d 865 (1956) (Board has no statutory authority to enlarge the scope of the proceedings or change the issues brought before it by a notice of appeal); Puget Sound Bridge & Dredging Co. v. Department of Labor & Indus., 26 Wash.2d 550, 554-55, 174 P.2d 957 (1946) (an issue not raised before the Board could not be considered by the courts); Merchant v. Department of Labor & Indus., 24 Wash.2d 410, 413, 165 P.2d 661 (1946) (the jurisdiction of the superior court is limited to a review of matters actually decided by the Department); Leary v. Department of Labor & Indus., 18 Wash.2d 532, 540-41, 140 P.2d 292 (1943). The Act confers purely appellate authority upon the Board and the courts in cases under Title 51 RCW and denies them any authority over unappealed final Department orders. Perry, 48 Wash.2d at 210, 292 P.2d 366.
The Board and the courts do have authority under the Act to reconsider decisions properly appealed by one of the parties. In fact, the civil rules for superior court, including CR 60, apply to proceedings before the Board and superior court. RCW 51.52.140; WAC 263-12-125. Had Mrs. Kingery timely appealed the Department order to the Board in 1983, she could have pursued a CR 60 remedy before the Board, subject to the usual requirements of CR 60. But she did not appeal and her failure to do *571 so precludes her from seeking relief under Title 51 RCW; she cannot evade her responsibility under Title 51 RCW to appeal from a Department order that aggrieved her. Shoopman v. Calvo, 63 Wash.2d 627, 630, 388 P.2d 559 (1964) (a claimant has a choice to either accept the Department's determination or appeal from it, but if he chooses not to appeal, he is concluded by the decision); Prince v. Saginaw Logging Co., 197 Wash. 4, 13, 84 P.2d 397 (1938) (the correctness of a Department decision can not be challenged in another tribunal where it has been acquiesced to by failure to timely appeal).
Under the explicit terms of Title 51 RCW and our case law, Mrs. Kingery's failure to appeal the 1983 Department denial order rendered the order final, and deprived the Board and the courts of jurisdiction to act.
B. Mrs. Kingery is Not Entitled to Equitable Relief
Notwithstanding the foregoing, the Act did not, and could not, alter the constitutional equity power of Washington's courts over industrial injury cases. WASH. CONST. art. IV, § 6. We have recognized a very narrow equitable power in the courts, apart from the provisions of Title 51 RCW, to set aside actions of the Department. Although we have recognized equity may undo a final Department order, we have also rarely exercised such equitable power.
In Ames v. Department of Labor & Indus., 176 Wash. 509, 30 P.2d 239 (1934), we avoided the strict 60-day time limit for filing an appeal where Ames, within days of an industrial accident, was declared insane by the superior court and committed to the Western State Hospital. The Department rejected his industrial insurance claim, sending its decision to his home address. Eight months after the Department's rejection of his claim, Ames was discharged from the hospital and he then filed a petition for a rehearing within 60 days of his discharge. The Department denied his petition because it was not filed within 60 days of communication of the original Department order rejecting his claim. We affirmed the trial court in granting equitable relief to Ames:
Certainly the department, like the courts, must consider equitable rules in all proper cases.
The general policy of our laws is to protect those who are unable to protect themselves, and equitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules. Our Legislature has always been well advised of the uses and the purposes of equity, and it would be abhorrent and contrary to established public policy to hold that the legislature intended by the limitations in the industrial insurance act to permit the department to deal ex parte with a workman's claim and deny his just rights unheard while he was known to be non compos mentis.

Ames, 176 Wash. at 513, 30 P.2d 239 (emphasis added). We avoided the statutory time limits because the claimant was insane and without a guardian during the appeal period, and the Department acted ex parte, knowing of Ames' incapacity. Similarly, in Rodriguez v. Department of Labor & Indus., 85 Wash.2d 949, 540 P.2d 1359 (1975), we held Rodriguez's untimely appeal would be allowed because he was unable to read or write Spanish or English and spoke Spanish only; moreover, the Department knew or should have known of such illiteracy through medical reports. Rodriguez's interpreter was unavailable when the order was issued.
Key to the application of equitable principles in Ames and Rodriguez are two elements: the claimant's competency to understand the content of the order and the appellate process, including noted time limits, when the Department communicated the order to the claimant, and some misconduct on the part of the Department in communicating its order to the claimant.
We have refused to broaden application of equitable relief for Industrial Insurance Act time limits beyond the narrow Ames-Rodriguez exception. In Leschner v. Department of Labor & Indus., 27 Wash.2d 911, 185 P.2d 113 (1947), we refused to extend Ames where the claimant relied on her physician's statement that he had filed a claim with the *572 Department, but he had not. We distinguished Ames, noting the claim was filed four years after the injury and the claimant was "at all times in possession of her mental faculties," and on notice she must file with the Department. Id. at 925, 185 P.2d 113. We declined to expand the equitable relief powers of the courts in industrial insurance cases:
This we must decline to do, for, in our opinion, it would be a dangerous path to follow. Such a rule could only be in disregard of the universal maxim that ignorance of the law excuses no one. What is more important, it would substitute for a positive rule established by the legislature a variable rule of decision based upon individual ideas of justice conceived by administrative officers as well as by the courts.
Leschner, 27 Wash.2d at 926, 185 P.2d 113. See also Johnson v. Department of Labor & Indus., 33 Wash.2d 399, 406-07, 205 P.2d 896 (1949) (court unwilling to extend the "broad equitable principles" laid down in Ames where petitioner is not incompetent).
The narrow equitable exception applied in our cases does not help Mrs. Kingery. To avail herself of this exception and avoid claim preclusion based on her failure to timely appeal, she must show she was incompetent when she received the Department's 1983 order denying her benefits. Mrs. Kingery was competent at all times relevant to this case and was initially represented by counsel. There is also no assertion of any inappropriate conduct by the Department. Thus, the only equitable exception to Act time limits recognized by this Court is unavailable to Mrs. Kingery.
Moreover, to extend the limited equitable rule of Ames and Rodriguez is to open an avenue by which claimants and employers can circumvent the strict procedures of the Department and the Board to pursue a remedy in court. Thousands of claims are filed with the Department each year. To permit industrial insurance parties to pursue a court remedy with regard to otherwise final orders opens the door to untold cases in the courts. There would be no limiting principle to courts setting aside on equitable grounds otherwise final Department orders at the request of workers, employers, or the Department.[5]
Even if we were inclined to extend the principle of Ames and Rodriguez, Mrs. Kingery has not established a basis in equity for relief. Although not a basis for its decision in Leschner, this Court felt compelled to note the claimant's lack of diligence in perfecting and prosecuting her claim for compensation was an additional reason why she was not entitled to equitable relief in the courts. "The principle applicable to the situation is tersely expressed in an ancient maxim: Equity aids the vigilant, not those who slumber on their rights." Leschner, 27 Wash.2d at 927, 185 P.2d 113. "Even were it assumed that this court might grant equitable relief from the [applicable time limits], nevertheless, because of her laches, respondent would have no standing in court to seek our interposition." Leschner, 27 Wash.2d at 928, 185 P.2d 113.
Mrs. Kingery inadequately explains her eight-year delay in moving to set aside the Department's 1983 order. She was initially dissatisfied with the Department decision denying her widow's benefits, believing her husband died from his industrial injury. She could have secured another expert in 1983 to contest Dr. Addison's autopsy findings. No explanation has been given why she or her attorney at the time did not do so. Mrs. Kingery's failure to avail herself of the provisions of RCW 68.08.105, as it existed in 1983, to schedule a meeting with the coroner on the autopsy findings is unexplained.[6] Despite *573 her concerns and the notice in the 1983 Department order she had 60 days to appeal, she did not do so.
Mrs. Kingery's delay from February 1990 to May 1991, a period of 15 months, in acting on the autopsy report remains unexplained in the record. Mrs. Kingery did not exhibit due diligence in pursuing her claim for equitable relief.[7]

CONCLUSION
Mrs. Kingery invites the Court to effectively overturn Marley v. Department of Labor & Indus., 125 Wash.2d 533, 886 P.2d 189 (1994), recognizing a final unappealed Department order is res judicata. We decline to do so. Title 51 RCW does not afford Mrs. Kingery a remedy with respect to a final, unappealed Department order.
She also seeks to extend the equitable power of Washington courts to set aside final unappealed Department orders beyond circumstances where the claimant was incompetent and the Department failed to properly communicate its order. We decline to extend equity to such an extent because it is difficult to envision a principled limit on the exercise of equitable power to avoid the requirements of the Industrial Insurance Act. Granting the relief Mrs. Kingery requests could fundamentally affect the processing of thousands of industrial insurance claims and open the door to requests by employers, the Department, and claimants to re-open otherwise final unappealed Department orders.
Moreover, Mrs. Kingery failed to timely utilize existing regular mechanisms to further investigate her doubts regarding the circumstances of her husband's death and to seek revision of the Department's decision. Mrs. Kingery did not diligently pursue remedies available to her.
We affirm the Court of Appeals and uphold the decisions of the Department and the Board denying review of Mrs. Kingery's claim.
DURHAM, C.J., and DOLLIVER and GUY, JJ., concur.
MADSEN, Justice (concurring in the majority).
I agree with Justice Alexander that the court's equitable powers are not limited to cases where it is shown that the claimant is essentially incompetent. See Dissent at 574. I agree with the majority, however, that the *574 claimant in this case failed to diligently pursue her rights. See Majority at 572-573.
ALEXANDER, Justice (dissenting).
In my judgment, the trial court did not abuse its considerable discretion in granting Marie Kingery's motion, made pursuant to CR 60(b)(11) and CR 60(c), to vacate an unappealed order of the Department of Labor and Industries that denied her widow's benefits. Consequently, I would reverse the Court of Appeals decision upholding the decisions of the Department and the Board of Industrial Insurance Appeals. I, therefore, dissent.
In concluding that equitable considerations justified judicial intervention to reopen Kingery's claim, the trial court relied on this court's decision in Abraham v. Department of Labor & Indus., 178 Wash. 160, 34 P.2d 457 (1934). In Abraham, we discussed the finality of unappealed orders of the Department and said this court has long recognized that an unappealed Department order is final "unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened." Abraham, 178 Wash. at 163, 34 P.2d 457 (emphasis added).
The majority, relying on Ames v. Department of Labor & Indus., 176 Wash. 509, 30 P.2d 239, 91 A.L.R. 1392 (1934) and Rodriguez v. Department of Labor & Indus., 85 Wash.2d 949, 540 P.2d 1359 (1975), is of the view that a court may intervene to order reopening of an unappealed claim that has been closed for more than a year only in cases where it is shown that the claimant is essentially incompetent. While I would readily agree that we recognized a general policy in Ames and Rodriguez that a court should intervene to protect those who are unable to protect themselves, I do not believe that we intended to foreclose granting relief to persons who, while not non compos mentis (Ames) or illiterate (Rodriguez), were innocent victims of circumstances largely beyond their control.
This case, as the experienced trial judge observed, is a case where it is wholly proper to bring the equitable power of the court to bear to undo a final order of the Department. My conclusion in that regard is compelled by the fact that Mrs. Kingery's failure to appeal the Department's 1983 order or to seek a reopening of her claim within a year of the date the order was entered was due to her inability to learn the true cause of her husband's death. This, in my judgment, excuses her failure to pursue the claim as much as if her failure were due to mental incompetency or illiteracy.
To fully appreciate Mrs. Kingery's situation, it is necessary to understand precisely what she knew about the cause of her husband's death on October 20, 1983, the date the Department filed its order affirming its earlier order denying benefits. It is also important to consider the formidable obstacles she faced thereafter to learn the true cause of his death.
It is clear that in 1983 Mrs. Kingery was aware that an autopsy had been performed at the direction of the Grays Harbor County coroner and that the report concluded that the cause of Mr. Kingery's death was a heart attack, a cause that would not support a claim for widow's benefits. Furthermore, at about this time, her attorney withdrew and informed her that she would have to handle any appeal of the Department's order on her own. Faced with these obstacles, which must have appeared insurmountable to one not trained in the law, she quite understandably did not file an appeal from the Department's order.
Nevertheless, armed with nothing more than intuition and a nagging feeling that justice had not been done, Mrs. Kingery set about to ascertain the true reason for her husband's death. On numerous occasions she requested a copy of the autopsy report from the county coroner, and on each occasion she was rebuffed on grounds that the report was "too gory" and she wouldn't understand it. Certified Appeal Board R. at 112-13. She also attempted to obtain assistance from other legal counsel and was unsuccessful in that effort.
Finally, with the assistance of a United States congressman, she obtained a copy of the autopsy report in February 1990. Fortunately, *575 the coroner was willing to send the report on to two medical examiners who confirmed Mrs. Kingery's suspicions that workplace injuries, not a heart attack, caused Mr. Kingery's death. Following receipt of this information, Mrs. Kingery made a timely reapplication for widow's benefits. Despite being faced with evidence which would have justified an award of benefits had it been presented in 1983, the Department and Board refused to allow her to reopen her claim. It was only then that she sought the intervention of the superior court.
These facts cry out for the equitable relief that the trial court granted to her. Inexplicably, the majority disagrees, declining to expand the equitable relief powers of the court beyond the narrow factual confines of Ames and Rodriguez, suggesting that it is dangerous to "open an avenue by which claimants and employers can circumvent the strict procedures of the Department and the Board to pursue a remedy[.]" Majority op. at 572. I submit that the avenue the trial court opened to Mrs. Kingery was one to justice and equity and we should not close it now. While I agree with the majority that some limits on the equitable powers of the court are appropriate, any such limitations must be viewed in light of the general principle that the workers' compensation act is remedial in character and should be broadly and liberally construed in order to effectuate its purpose to benefit workers. Hilding v. Department of Labor & Indus., 162 Wash. 168, 298 P. 321 (1931). See also Douchette v. Bethel Sch. Dist. No. 403, 117 Wash.2d 805, 812, 818 P.2d 1362 (1991) (recognizing that filing deadlines might, in appropriate circumstances, be equitably tolled to carry out the purposes of remedial and humanitarian statutes). No system, in short, that is designed to protect workers and their beneficiaries should be so procedurally rigid that it prevents the reopening of a claim under circumstances as compelling as these.
While with hindsight it is easy to say that Mrs. Kingery should have filed an appeal in 1983 or that she should have been more diligent in uncovering the new evidence relating to her husband's death, I do not so easily find fault. It is not insignificant that this woman had only recently experienced the trauma of her husband's death at the time she chose not to appeal. Neither is it unimportant that her attorney withdrew from the case during the time the appeal period was running. In light of those circumstances and the additional fact that she was given information by officials of the government which pointed toward her not having a valid claim for widow's benefits her decision to not appeal is understandable. Despite these setbacks, she attempted to learn the facts and was rebuffed at every turn until she was finally able to obtain the necessary evidence through extra-judicial means. In my view, the formidable obstacles that Mrs. Kingery faced in her efforts to discover the evidence she needed to pursue her claim were easily equivalent to the obstacles that Ames and Rodriguez faced in understanding the orders of the Department by virtue of their incompetency. In that regard, I agree with the trial judge who said, "I cannot glean from this record that the plaintiff herein did not diligently pursue this matter." (Letter from Judge Godfrey to counsel of 11/10/93, at 3). I agree with the trial court that the only just result in this case is to reopen Mrs. Kingery's claim. Because by affirming the Court of Appeals we deny that relief, I dissent.
JOHNSON, SANDERS and SMITH, JJ., concur.
NOTES
[1] There is no evidence in the record Mrs. Kingery's attorney sought a copy of Dr. Addison's autopsy report, although the Department contends in oral argument the Department's microfiche of the record, which included the autopsy report, was provided to Mrs. Kingery's lawyer.
[2] RCW 68.08.105, as it existed in 1983, did not require the coroner or medical examiner to provide the autopsy report to family members. The statute did, however, require the coroner to meet with family members, at their request, to discuss the report's contents. There is no record Mrs. Kingery requested such a conference. That statute was amended in 1985 to allow "any family member" to examine and obtain copies of autopsy reports. Laws of 1985, ch. 300, § 1. Recodified as RCW 68.50.105 by Laws of 1987, ch. 331, § 89.

Under RCW 68.08.102, as it existed in 1983 (now RCW 68.50.102), Mrs. Kingery could have petitioned the court to compel the coroner to disclose the autopsy results. She did not do so.
[3] Dr. Addison, who performed the original autopsy, had since died.
[4] RCW 51.04.010 states:

The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.
(Emphasis added.)
[5] The dissent urges judicial intervention based on equitable considerations, Dissent at 574, and agrees "that some limits on the equitable powers of the court are appropriate," Dissent at 575, but neglects to articulate what those limits are. While this approach may be initially appealing, it ignores the realities of the industrial insurance system, and is ultimately unworkable. The dissent would open a veritable Pandora's box of equitable claims to circumvent the rules of the Department and the Board. Both workers and employers would seek to avail themselves of equitable relief in the courts when they neglect to properly present their claims or contentions to the Department and the Board. This we must decline to condone.
[6] Her assertion she was subsequently denied the autopsy report from 1985 to 1990 also does not square with the facts the statute was amended in 1985 to give her that right, the coroner reported no requests, and the coroner acted so swiftly in 1990 to aid her once she requested the report.
[7] Mrs. Kingery contends the courts' equitable power should be guided by CR 60 principles, but she has not met the requirements of CR 60. Mrs. Kingery argued before the Board she was entitled to equitable relief because of "new evidence." CR 60(b)(3), regarding new evidence, has a one year time limit. Because a discovery rule does not apply to occupational injury claims, Rector v. Department of Labor & Indus., 61 Wash. App. 385, 810 P.2d 1363, review denied, 117 Wash.2d 1004, 815 P.2d 266 (1991), any reliance on CR 60(b)(3) by Mrs. Kingery is untimely.

Before the trial court, Mrs. Kingery argued she was entitled to equitable relief under CR 60(b)(11) and/or CR 60(c). CR 60(b)(11), the catch-all provision of CR 60(b), is applicable where other sections of CR 60(b) do not apply, but still requires action be taken within a "reasonable time." See Flannagan v. Flannagan, 42 Wash.App. 214, 221-22, 709 P.2d 1247 (1985), review denied, 105 Wash.2d 1005 (1986). Mrs. Kingery's delay of eight years is not a reasonable time.
Mrs. Kingery also asserts she may pursue an independent action to vacate the Department's unappealed order in superior court under CR 60(c). She cites no cases, however, in which CR 60 was applied to vacate a Department order regarding a claim. In the only industrial insurance case she cites, Shum v. Department of Labor & Indus., 63 Wash.App. 405, 819 P.2d 399 (1991), the Court of Appeals held the trial court abused its discretion in granting the claimant's CR 60(b) motion to vacate a Department order where the only ground for vacation was an error of law. Shum, 63 Wash.App. at 408, 819 P.2d 399. None of the other cases she cites addresses application of CR 60 in an industrial insurance context and therefore do not advance Mrs. Kingery's argument.
Finally, Mrs. Kingery's assertion of equitable principles is to no avail where she failed to appeal within time limits mandated by Title 51 RCW. "Equitable principles cannot be asserted to establish equitable relief in derogation of statutory mandates." Rhoad v. McLean Trucking Co., Inc., 102 Wash.2d 422, 427, 686 P.2d 483 (1984); Norlin v. Montgomery, 59 Wash.2d 268, 273, 367 P.2d 621 (1961); Department of Labor & Indus. v. Dillon, 28 Wash.App. 853, 855, 626 P.2d 1004 (1981).