45 P.3d 1121 (2002)
DEPARTMENT OF LABOR & INDUSTRIES OF the STATE OF WASHINGTON, Appellant,
v.
FIELDS CORPORATION, Respondent.
No. 26325-4-II.
Court of Appeals of Washington, Division 2.
May 10, 2002.
As Amended on Denial of Reconsideration July 12, 2002.
*1122 Kay Allison Germiat, Asst. Atty. Gen., Tacoma, for Appellant.
Guy Jeffrey Sternal, Jennifer Ann Wing, Eisenhower & Carlson, Tacoma, for Respondent.
MORGAN, J.
Fields Corporation sought equitable relief from res judicata. The trial court granted such relief, and we affirm.
Under Washington's Industrial Insurance Act, an employer has the option of enrolling in what the Department of Labor and Industries refers to as a "retrospective rating program."[1] An employer who selects that option *1123 pays a standard industrial insurance premium for the ensuing coverage year. At the end of that year, the Department retrospectively calculates the premium that the employer should have paid according to the employer's actual claim experience; compares the retrospective premium to the standard premium; and refunds or assesses the difference.[2]
From February 1993 to March 1996, Fields Corporation employed Brian Pierce as a truck driver. During that time, it was also participating in the retrospective rating program.
On June 10, 1993, Pierce filed an industrial insurance claim. He alleged "pain in [his] elbows and shoulders, which [he] attributed... to vibration from the steering wheel of his truck."[3] His physician diagnosed tendonitis, subacromial bursitis, and epicondylitis. In May 1995, a different doctor diagnosed subdeltoid bursitis and epicondylitis. In June and again in August 1995, the Department allowed the claim, finding epicondylitis and rotator cuff syndrome. In January 1996, the Department closed the claim.
On August 29, 1995, Pierce filed a second claim. He alleged "pain in [his] left shoulder," which he "attributed ... to a self-arrested fall and a board falling on his left shoulder while he was unloading his truck."[4] His physician diagnosed a fractured clavicle. On October 2, 1995, the Department allowed this second claim.[5]
Fields had the right to appeal the October 2 order within 60 days.[6] It did not, because it "had no information on which to do so."[7] As Fields and the Department have stipulated:
It was impossible for Fields Corporation to tell on the date Mr. Pierce filed his second claim, or at any time within 60 days after the claim was filed or allowed, that Mr. Pierce was actually suffering a continuation and possible aggravation of his pre-existing shoulder condition. This could only be determined from the notes, reports, and other information generated during the subsequent course of Mr. Pierce's treatment.[[8]]
On June 14, 1996, Pierce's physician made a chart note suggesting that Pierce's second claim might really be a continuation of his first claim, not a second, separate claim. Later in June 1996, and again in February 1997, other doctors reported likewise. The record does not show when Fields learned of this information.
On February 11, 1997, after retrospectively calculating Fields' industrial insurance premium, the Department assessed Fields an additional $22,073. It premised its calculation on Pierce's two claims being separate. Fields protested the assessment, but on June 16, 1997, the Department declined to change its ruling.
On July 14, 1997, Fields appealed the assessment to the Board of Industrial Insurance Appeals. Fields argued, for the first time, that "Pierce's second claim should have been characterized as a continuation of the condition treated under the first claim,"[9] and, as a result, that it did not owe the additional $22,073.
On March 13, 1998, Fields and the Department stipulated "that Mr. Pierce's second claim should be properly characterized as a continuation of the same condition that was *1124 initially manifested and treated under the first claim."[10] Fields and the Department also stipulated that Fields "would not have had to pay any additional premium assessment if Mr. Pierce's second claim had been properly characterized as a continuation of his first claim."[11]
On June 8, 1998, the Board of Industrial Insurance Appeals ruled that Fields was precluded from showing that Pierce's two claims were really the same claim. Concluding that the October 2, 1995 order was "res judicata because [Fields] did not file a timely appeal to it,"[12] the Board affirmed the Department.
Fields appealed to superior court, and the parties made cross-motions for summary judgment. The Department argued that Fields'"failure ... to timely appeal the Department order dated October 2, 1995, precludes it from seeking relief under Title 51" or the law of equity.[13] Fields claimed that "despite every effort of due diligence on its part, [it] could not have known that Pierce's second injury was a continuation of his first injury until Pierce's physician accurately diagnosed Pierce's second injury."[14] Thus, it said, it was an "innocent victim [] of circumstances." [15] The trial court granted Fields' motion, and the Department brought this appeal.
On appeal, we consider two questions. (1) Did the Department's order of October 2, 1995 become res judicata when not appealed within 60 days? (2) If so, should Fields now receive equitable relief from the effects of res judicata?

I.
A Department order is "final and conclusive, ..., unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened."[16] Thus, "[a]n unappealed Department order is res judicata as to the issues encompassed within" its terms.[17]
The order in issue here is the order that opened Pierce's second claim. That order was entered on October 2, 1995, and was final and appealable only until December 1, 1995. Thereafter, it was final and not appealable.

II.
Fields contends that it should receive equitable relief from the effects of res judicata. It reasons, based on the parties' stipulation, that it could not have known the facts needed to appeali.e., that Pierce's two claims were really one claimuntil after the time to appeal had run.
The Department acknowledges that the "Washington State Constitution provides equity power to the courts," and that the Industrial Insurance Act "cannot and did not alter this power."[18] Relying on Kingery v. Department of Labor & Industries,[19] the Department then argues that this power "is extremely limited,"[20] and that it either cannot or should not be applied here. The Department states in its brief:

*1125 The rare occasions when the courts have exercised the equitable power to extend the statutory appeal period have been limited to situations in which 1) a claimant's competency to understand orders, procedure, and time limits is in question, and 2) the Department was aware of this when it sent the order. In other words, the courts exercise their equitable powers to protect injured workers who are unable to protect themselves. Kingery, 132 Wash.2d at 173 [937 P.2d 565] (citing Ames v. Dep't of Labor & Indus., 176 Wash. 509, 30 P.2d 239 (1934)). Even this exception is narrowly construed.
One such circumstance when a court may consider equitable principles is when a claimant is insane. Ames, 176 Wash. at 513 [30 P.2d 239]. Another is when a claimant is unable to read, write or speak the English language. Rodriguez v. Dep't of Labor & Indus., 85 Wash.2d 949, 540 P.2d 1359 (1975). These are the only two cases in which a party has been excused from strict compliance with appeal filing deadlines. Along with the claimants' disabilities, the Ames and Rodriguez decisions also involved the presence of some misconduct on the part of the Department in communicating its order to a party. Kingery, 132 Wash.2d at 174-75 [937 P.2d 565].[[21]]
The Department fails to note that the Kingery opinion it cites and describes was not signed by a majority of the participating justices.[22]
The Kingery court issued three opinions, apparently because the justices could not agree on the reach of Ames v. Department of Labor & Industries[23] and Rodriguez v. Department of Labor & Industries.[24] Here then, we must understand Ames, Rodriguez, and each of Kingery's three opinions.
In Ames,[25] an injured worker made an industrial insurance claim. While the claim was pending, he was committed to a mental hospital as "violently insane." With knowledge of his commitment, the Department rejected his claim and sent notice to his house. He did not appeal within 60 days, and when he later tried to bring his claim, the Department relied on res judicata. Affirming the trial court's grant of equitable relief from res judicata, the Supreme Court said that "the general policy of our laws is to protect those who are unable to protect themselves," and that "equitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules."[26]
In Rodriguez, an injured worker could not read or write any language, and he spoke only Spanish. The Department sent him a written order closing his claim, even though it "knew or should have known" that he "was extremely illiterate and himself unable to ascertain or understand the nature and contents of the order."[27] He did not appeal within the required 60 days, and the trial court denied equitable relief. The Supreme Court reversed, saying that "the same broad principles of equity applied in Ames ... can be applied under the special circumstances here."[28]
Kingery involved a man who died while working. His widow applied for benefits. The Department denied her application, and she did not appeal within 60 days. Eight years later, she sought reconsideration based on newly discovered evidence. The Department disputed her claim that during the eight years, she had tried diligently to develop the evidence that she had finally found and presently had available. The trial court ruled for her, but we reversed. The Supreme Court granted review and issued three opinions.
In the first opinion, four justices said that extending Ames and Rodriguez "would be a *1126 dangerous path to follow;" thus, a trial court can grant equitable relief from res judicata on two conditions only: (1) that the claimant was incompetent "to understand the content of the order and the appellate process," and (2) that the Department engaged in "some misconduct ... in communicating its order."[29] Noting that "equity aids the vigilant, not those who slumber on their rights,"[30] the four justices concluded that Kingery had been competent to understand; that she had "not exhibit[ed] due diligence in pursuing her claim for equitable relief;"[31] and that she was not entitled to relief.
In the third opinion, four justices said that prior cases do not "foreclose granting relief to persons who, while not non compos mentis (Ames) or illiterate (Rodriguez), were innocent victims of circumstances beyond their control."[32] The four justices thought that Kingery was an innocent victim of circumstances; that she had diligently pursued her rights; and that she was entitled to relief.
In the second opinion, one justice said that a "court's equitable powers are not limited to cases where it is shown that the claimant is essentially incompetent."[33] She also thought, however, that Kingery had "failed to diligently pursue her rights."[34] She concluded that Kingery was not entitled to relief.
To read the three opinions together is to see that five or more justices subscribed to three propositions. First, equitable relief from res judicata is not limited to circumstances in which the claimant was incompetent or illiterate; CR 60 and/or "the court's equitable powers" permit the court to grant relief under other circumstances also.[35] Second, as one condition of equitable relief, the claimant must have diligently pursued his or her rights. Third, Kingery had not diligently pursued her rights.
To apply Kingery here, we ask two questions: (1) Do the circumstances excuse Fields' failure to appeal Pierce's second claim before the date on which the period for appeal expired (December 1, 1995)? (2) Has Fields shown that it was "Vigilant"i.e., that it did not "slumber on its rights"after the period for appeal expired?
Based on the parties' stipulations, the answer to the first question is yes. The parties have stipulated that "it was impossible"not just difficult or impracticalfor Fields to have known within the 60 days prescribed for appeal that Pierce's two claims were really only one claim. Thus, Fields cannot be faulted for not appealing by December 1, 1995. Additionally, the parties have stipulated, for purposes of this appeal, that "it has recently become evident ... that Mr. Pierce's second claim should be properly characterized as a continuation of the prior claim."[36] Thus, to withhold relief would be to sanction the Department's collection, from a citizen of this State, an amount the Department knows is not due.
The second question, whether Fields "slumbered" on its rights, is more debatable. The Department answers yes, because Fields "did nothing to protect its position from October 2, 1995 to July 16, 1997."[37] Fields answers no, "because the stipulated facts in this matter reflect that Fields pursued its appeal of the second claim as soon as it knew or could have known of medical information which established that Pierce's `second' injury was actually an aggravation or continuation of his first injury."[38]
Like the trial court, we agree with Fields. According to the parties' stipulation, the identity of Pierce's first and second claims "could only be determined from the notes, reports, and other information generated *1127 during the subsequent [post-December 1, 1995] course of Mr. Pierce's treatment."[39] According to the parties' stipulation, these "notes, reports, and other information" began to become available in June 1996 and were still being collected in February 1997, when the report of an independent medical examiner was submitted. On March 13, 1998, according to the parties' stipulation, it had only "recently become evident ... that Mr. Pierce's second claim should be properly characterized as a continuation of the prior claim."[40] Fields pursued its appeal in July 1997, the trial court ruled that Fields had diligently pursued its rights, and we decline to disturb that ruling.[41]
Although the Department suggests otherwise, our result is consistent with NIFM v. Department of Labor & Industries.[42] In NIFM, we held that an employer should not be permitted to litigate a claim that the Department disputes, and that the employer should have litigated earlier. Here, we hold that an employer should be permitted to litigate a claim that the Department does not dispute, and that the employer had valid reasons for not litigating earlier. Declining to endorse the Department's attempt to collect from a citizen of this State an amount the Department knows truth will not support, we conclude that the trial court did not err by granting equitable relief from the otherwise-applicable effects of res judicata.[43]
Affirmed.
We concur: QUINN-BRINTNALL, A.C.J., and HOUGHTON, J.
NOTES
[1] RCW 51.18.010 et seq.; WAC 296-17-91201 et seq.; see also former RCW 51.16.035; former WAC 296-17-900 et seq.
[2] See Northwest Independent Forest Mfrs. (NIFM) v. Dep't of Labor & Indus., 78 Wash.App. 707, 709-10, 899 P.2d 6 (1995).
[3] Clerk's Papers (CP) at 30.
[4] Id.
[5] This claim may also have been allowed in an order dated October 16, 1995. For convenience, we refer only to the order dated October 2.
[6] RCW 51.52.060(1)(a) provides:

Except as otherwise specifically provided in this section, a worker, beneficiary, employer, health services provider, or other person aggrieved by an order, decision, or award of the department must, before he or she appeals to the courts, file with the board and the director, by mail or personally, within sixty days from the day on which a copy of the order, decision, or award was communicated to such person, a notice of appeal to the board.
[7] CP at 31.
[8] CP at 31 (parties' stipulation).
[9] CP at 32-33.
[10] CP at 31-32.
[11] CP at 33.
[12] CP at 36.
[13] CP at 5.
[14] Id. at 18.
[15] Id.
[16] Abraham v. Dep't of Labor & Indus., 178 Wash. 160, 163, 34 P.2d 457 (1934).
[17] Kingery v. Dep't of Labor & Indus., 132 Wash.2d 162, 169, 179, 937 P.2d 565 (1997); see also Marley v. Dep't of Labor & Indus., 125 Wash.2d 533, 537-38, 886 P.2d 189 (1994).
[18] Br. of Appellant at 21. Several Washington cases, including this court's opinion in Kingery v. Dep't of Labor & Indus., 80 Wash.App. 704, 709, 910 P.2d 1325 (1996), aff'd 132 Wash.2d 162, 937 P.2d 565 (1997) state that once a judgment is final, a court may reopen it (i.e., grant relief from the operation of res judicata) only if authorized by CR 60 or a statute. See also In re Marriage of Shoemaker, 128 Wash.2d 116, 120, 904 P.2d 1150 (1995); Lejeune v. Clallam Cty., 64 Wash. App. 257, 269, 823 P.2d 1144, review denied, 119 Wash.2d 1005, 832 P.2d 488 (1992). In the Supreme Court's opinions in Kingery, however, all nine justices seem to have indicated that at least in worker's compensation cases, a court can use its "equity power" to relieve a party from the effects of res judicata. As a result, the Department's acknowledgment seems well founded.
[19] 132 Wash.2d 162, 937 P.2d 565.
[20] Br. of Appellant at 21.
[21] Br. of Appellant at 21-22 (footnote omitted).
[22] In a motion for reconsideration, the Department suggests it was misled by decisions from this and other courts. See Wells v. Olsten Corp., 104 Wash.App. 135, 142, 15 P.3d 652 (2001); Solven v. Dep't of Labor & Indus., 101 Wash.App. 189, 193-94, 2 P.3d 492, review denied, 142 Wash.2d 1012 (2000); Rabey v. Dep't of Labor & Indus., 101 Wash.App. 390, 395, 3 P.3d 217 (2000). To the extent these opinions describe Kingery, they should be used with great caution.
[23] 176 Wash. 509, 30 P.2d 239 (1934).
[24] 85 Wash.2d 949, 540 P.2d 1359 (1975).
[25] 176 Wash. at 510, 30 P.2d 239.
[26] Ames, 176 Wash. at 513, 30 P.2d 239.
[27] Rodriguez, 85 Wash.2d at 955, 540 P.2d 1359.
[28] 85 Wash.2d at 954, 540 P.2d 1359.
[29] Kingery, 132 Wash.2d at 174-75, 937 P.2d 565.
[30] 132 Wash.2d at 176, 937 P.2d 565, quoting Leschner v. Dep't of Labor & Indus., 27 Wash.2d 911, 927, 185 P.2d 113 (1947).
[31] 132 Wash.2d at 177, 937 P.2d 565.
[32] 132 Wash.2d at 179, 937 P.2d 565 (Alexander, J., dissenting).
[33] 132 Wash.2d at 178, 937 P.2d 565 (Madsen, J., concurring).
[34] 132 Wash.2d at 178, 937 P.2d 565 (Madsen, J., concurring).
[35] See footnote 18.
[36] CP at 31.
[37] Br. of Appellant at 26.
[38] Br. of Resp't at 18.
[39] CP at 31.
[40] CP at 31 (emphasis added).
[41] In a motion for reconsideration, the Department argues that the parties' stipulation applies for purposes of this appeal, but not for purposes of proceedings after remand. We have not considered whether the stipulation applies for purposes of proceedings after remand, and nothing in this opinion means that it does or does not. Following remand, the tribunals below remain free to apply (or not apply) the stipulation according to its terms.
[42] 78 Wash.App. 707, 899 P.2d 6.
[43] In a motion for reconsideration, the Department asks that we modify our opinion to reflect that this is "a garden variety res judicata case" in which "[t]he Department's res judicata argument is no different than the countless res judicata arguments that are raised daily in administrative and judicial tribunals throughout this nation." Appellant's Motion for Reconsideration at 13, 14. The Department would be correct if it were using res judicata defensively, to extinguish a claim or bar its re-litigation. Instead, however, the Department is using res judicata offensively, as a basis for extracting money that the Departmentaccording to its stipulation on appealknows is not due. We would apply res judicata in "a garden variety case," but we decline to apply it here.