[No. 32256-1-II.   Division Two.   January 4, 2006.]

ROSALIE A. HYATT ET AL., *Appellants*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

---

[18] RCW 13.40.010(2) (emphasis added).

388

390

*Jennifer M. Cross-Euteneier* (of *Vail Cross-Euteneier & Associates*), for appellants.

*Robert M. McKenna, Attorney General,* and *Kay A. Germiat, Deputy,* for respondent.

¶1 HOUGHTON, J. — Fourteen workers' compensation claimants appeal from a superior court order affirming a Board of Industrial Insurance Appeals (BIIA) decision either denying or limiting an adjustment of their time-loss compensation rate claims as calculated by the Department of Labor and Industries (L&I). We affirm.

## FACTS

¶2 The 14 workers sustained industrial injuries and received employer-provided health care benefits, but those benefits ceased before L&I issued its time-loss compensation rate orders. In 12 of the claims (the 12 workers), L&I did not include the value of the workers' health care benefits in its calculations. In the other two cases, L&I included the health care benefits value in its time-loss wage rate calculations, but it did not apply the recalculation retroactively for the time period the two workers requested.

¶3 The workers took their cases before the BIIA on stipulated facts under one claimant's name (Rosalie

Hyatt).[1] According to the 12 workers, Hyatt's procedural history typifies theirs, in that L&I denied their request to include the value of their health care benefits in its wage rate calculations. As noted, the procedural history varies in 2 of the 14 workers' cases, as is more fully explained and analyzed below.[2]

¶4 After Hyatt sustained an industrial injury on August 28, 1990, her employer provided health care benefits through January 31, 1993. L&I closed Hyatt's claim on August 14, 1991, with a permanent partial disability award and terminated her health insurance benefits on January 31, 1993.

¶5 On May 31, 1994, she applied to reopen her claim, and L&I reopened it on September 22, effective May 23, 1994. On October 23, 1998, L&I issued an order setting forth Hyatt's time-loss rate that did not include her health care benefits. That order referred to its being based on her hourly rate, the hours she worked per day, the days she worked per week, and the fact that she was married with no dependent children. Hyatt did not appeal that order until several years later.

¶6 On November 8, 2001, Hyatt asked L&I to recalculate her time-loss rate in light of our Supreme Court's holding in *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 16 P.3d 583 (2001). L&I denied her request because no change of circumstances supported her request and its

---

[1] Because the 12 workers state that Hyatt's history typifies theirs, we do not set forth the other 11 individuals' facts.

[2] In Warren Adrian's case, he suffered an injury on January 4, 1994. In 1996, L&I issued a claim closing order. Later, L&I reopened the claim and increased his time-loss compensation by including the value of health care benefits. L&I did not correct past "underpayments" occurring before the reopening. Clerk's Papers at 172.

In Dennis Peterson's case, after he suffered an injury on September 3, 1998, L&I issued a determinative wage rate order on December 4, 1998. On February 14, 2002, after being placed on the pension rolls effective April 27, 1999, Peterson asked L&I to recalculate his wage rate to include his health care benefits. On February 19, 2002, acting under RCW 51.28.040, which limits retrospective adjustment, L&I issued an order recalculating Peterson's benefits beginning 60 days before his request.

October 23, 1998 order had become final, precluding her claim through res judicata.

¶7 Hyatt filed a protest and request for reconsideration of L&I's order. L&I forwarded her protest to the BIIA as a direct appeal. The BIIA affirmed L&I's order.

¶8 The BIIA entered findings of fact and conclusions of law and affirmed L&I's order denying recalculation.

¶9 In pertinent part, the BIIA concluded:

2.  The order issued on October 23, 1998, that established the basis for the claimant's time loss compensation rate, became final and was binding with regard to her time loss compensation rate. The rationale in the decision *Cockle v. Department of Labor and Indus., 142 Wn.2d 801 (2001) cannot be applied in this claim to recalculate the claimant's benefit rate.*

3.  RCW 51.28.040 cannot be used as a basis to recalculate the claimant's time loss compensation rate because the change in circumstances involving the termination of claimant's health insurance benefits occurred before the October 23, 1998 order. That order established the basis for the time loss compensation rate and there was no protest or appeal taken from the order.

4.  The claimant has not sustained a change of circumstances as contemplated by RCW 51.28.040.[3]

Administrative R. at 7.

¶10 On appeal to the superior court, the workers acknowledged that their 14 cases comprised essentially the same procedural history and the parties stipulated to consolidation.

¶11 After hearing argument, the superior court set forth findings of fact as to the workers' appeal, adopted the BIIA's findings of fact on each of the consolidated cases, entered conclusions of law, and affirmed the BIIA.

---

[3] Within its decision, the BIIA explained that the "claimant can only prevail if the [BIIA] determines that a change in law is a change in circumstances within the meaning of RCW 51.28.040. . . . The phrase 'change in circumstances' encompasses a change of facts personal to the claimant, not a change in the judicial interpretation of the law." Administrative R. at 4.

¶12 The court concluded that (1) L&I orders that are neither protested nor appealed are res judicata, (2) *Cockle* represented a substantial change in application of the law but it did not operate as a change of circumstances contemplated under RCW 51.28.040, (3) equitable relief did not apply, and (4) the BIIA's conclusions of law were correct.[4]

¶13 The workers appeal.

## ANALYSIS

### RES JUDICATA

¶14 The workers argue that because L&I did not inform them whether it included the health benefits in its monthly wage calculations, it cannot now successfully assert that the doctrine of res judicata precludes their time-loss wage rate recalculations. Adrian and Peterson, who appealed the orders limiting their time-loss calculations, also argue that L&I cannot assert res judicata to preclude them from seeking adjustments for past underpayments.

██ ██ ¶15 Courts apply the doctrine of res judicata to prevent repetitive litigation of claims or causes of action arising out of the same facts and to "avoid repetitive litigation, conserve judicial resources, and prevent the moral force of court judgments from being undermined." *Hisle v. Todd Pac. Shipyards Corp.*, 113 Wn. App. 401, 410, 54 P.3d 687 (2002), *aff'd*, 151 Wn.2d 853, 93 P.3d 108 (2004). Res judicata applies when (1) there has been a final judgment on the merits in a prior action between the same parties and (2) the prior and present actions involve (a) the same subject matter, (b) the same cause of action, (c) the same persons and parties, and (d) the same quality persons for or against whom the claim is made. *Hisle*, 113 Wn. App. at 410.

██ ¶16 L&I issued orders establishing monthly wage rates for each injured worker. The parties agree that 12 of

---

[4] In affirming the BIIA's conclusions, the trial court affirmed the retroactivity period for Adrian's and Peterson's recalculated wage rates.

the workers neither protested nor appealed the orders under RCW 51.52.050 and RCW 51.52.060(1)(a). Our Supreme Court has held that unprotested or unappealed L&I orders become complete and final adjudications binding on both L&I and a claimant. *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 537-38, 886 P.2d 189 (1994).

¶17 The workers cite *Somsak v. Criton Technologies/Heath Tecna, Inc.*, 113 Wn. App. 84, 52 P.3d 43 (2002), in support of their argument that res judicata does not apply here. In *Somsak*, Division One held that because the wage loss order did not detail the basis for time-loss compensation calculation, "fundamental fairness preclude[d] the application of res judicata." 113 Wn. App. at 93.

¶18 The workers assert that res judicata does not apply because L&I treated them similarly to Mary Somsak in that it failed to properly advise them about its time-loss wage rate calculations.

¶19 We recently addressed the same facts and argument in *Chavez v. Department of Labor & Industries*, 129 Wn. App. 236, 118 P.3d 392 (2005). Like Hyatt and unlike Somsak, L&I informed Chavez that it based his time-loss rate calculation on a "marital status of married with no dependents" and his wages and work hours at the time of injury. *Chavez*, 129 Wn. App. at 242. Like the *Chavez* court, we decline to follow *Somsak* under these facts.[5] As in *Chavez*, although Hyatt's time-loss order "did not expressly mention that the calculation excluded employer-paid health insurance, such was readily understood from the explicit statement of what *was* included in calculating [Hyatt's] time-loss rate. This is not a case, like that in *Somsak*, where the claimant was left to guess at how the time-loss rate had been calculated." *Chavez*, 129 Wn. App. at 242.

¶20 As to the other two workers, in Adrian's case, he failed to appeal the 1996 closing order. It became final within 60 days. Res judicata thus precludes his claim for past underpayments.

---

[5] We note that Division One agrees with *Chavez* on this point in *Lynn v. Department of Labor & Industries*, 130 Wn. App. 829, 838, 125 P.3d 202 (2005).

¶21 And Peterson sought a recalculation based on a change of circumstances under RCW 51.28.040. That statute permits a retrospective compensation rate adjustment for no more than 60 days prior to the claimant's request. L&I correctly adjusted Peterson's time-loss according to that statute and his argument fails.

CHANGE OF CIRCUMSTANCES

¶22 The workers next argue that *Cockle* constituted a change of circumstances within the meaning of RCW 51-.28.040. Under RCW 51.28.040: "If change of circumstances warrants an increase or rearrangement of compensation, like application shall be made therefor. Where the application has been granted, compensation and other benefits if in order shall be allowed for periods of time up to sixty days prior to the receipt of such application."

¶23 The term "wages" includes "the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire." RCW 51.08.178. When L&I issued 12 of the 14 wage orders, no reported court decision explicitly stated that health care benefits are of the "like nature" under RCW 51.08.178 and thus should have been included in the injured workers' wages. But in 2001, our Supreme Court stated in *Cockle*:

> We . . . construe the statutory phrase "board, housing, fuel, or other consideration of like nature" in RCW 51.08.178(1) to mean readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival. Core, *non*fringe benefits such as food, shelter, fuel, and health care all share that "like nature."

142 Wn.2d at 822-23 (footnote omitted). The issue before us is whether the *Cockle* holding constitutes a "change of circumstances" under RCW 51.28.040.

¶24 The BIIA's decision concluded that the workers' claims were not personal changes of circumstances and thus did not fit within RCW 51.08.178. The BIIA deter-

mined that although the law may change, only a change in a worker's personal circumstances implicates RCW 51-.08.178.[6] Because we accord BIIA's interpretation of the Industrial Insurance Act, Title 51 RCW, great weight, we agree. *Ochoa v. Dep't of Labor & Indus.*, 143 Wn.2d 422, 426, 20 P.3d 939 (2001). The 12 workers' argument fails.

### L&I's FIDUCIARY DUTY

¶25 The workers argue that L&I, as a trustee of the state fund, has a fiduciary responsibility to pay the injured workers the correct rates of compensation and to advise them fully of all factors taken into consideration when determining those rates.

¶26 L&I can serve as an administrative body authorized by law to act as trustee of a fund created, established, and maintained for the purpose of providing compensation to workers and their dependents for disabilities proximately cause by industrial accidents or occupational diseases. *Parks v. Dep't of Labor & Indus.*, 46 Wn.2d 895, 897, 286 P.2d 104 (1955). A trustee owes to the beneficiaries of the trust "the highest degree of good faith, care, loyalty, and integrity." *Allard v. Pac. Nat'l Bank*, 99 Wn.2d 394, 403, 663 P.2d 104 (1983).

¶27 To prevail on a breach of fiduciary duty claim, the workers must show that L&I formulated its interpretation of RCW 51.08.178 without using the judgment and care those persons of prudence, discretion, and intelligence exercise in the management of their own affairs. *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 840, 125 P.3d 202 (2005); *In re Estate of Cooper*, 81 Wn. App. 79, 88, 913 P.2d 393, *review denied*, 130 Wn.2d 1011 (1996). The workers presented no such evidence and their argument fails.

---

[6] Again we note that Division One held similarly in *Lynn*, 130 Wn. App. at 836.

EQUITABLE ESTOPPEL

¶28 The workers argue that L&I should be equitably estopped from asserting that its wage orders are res judicata.

¶29 Washington courts use a very narrow equitable power to set aside L&I's actions. *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 173, 937 P.2d 565 (1997). Although equity may undo a final order, the courts rarely exercise it. *Kingery*, 132 Wn.2d at 173.

¶30 Equitable doctrines are generally designed to relieve certain parties under special circumstances from the harshness of strict legal rules. *Kingery,* 132 Wn.2d at 173. To establish equitable estoppel, a party must prove (1) an admission, statement, or act inconsistent with a later claim; (2) reasonable reliance on the admission, statement, or act; and (3) injury to the relying party if the first party is allowed to contradict or repudiate the admission, statement, or act. *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). "Each element must be proved by clear, cogent, and convincing evidence." *Theodoratus*, 135 Wn.2d at 599. Because enforcing equitable estoppel against the government is not favored, the asserting party must also show that the doctrine is necessary to prevent a manifest injustice and that the exercise of government functions will not be impaired. *Theodoratus*, 135 Wn.2d at 599; *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993).

¶31 "[E]quitable relief from res judicata is *not* limited to circumstances in which the claimant was incompetent or illiterate." *Fields Corp. v. Dep't of Labor & Indus.*, 112 Wn. App. 450, 459, 45 P.3d 1121. " '[T]he court's equitable powers' permit the court to grant relief under other circumstances also." *Fields*, 112 Wn. App. at 459. One condition of equitable relief requires the claimant to have diligently pursued his rights. *Fields*, 112 Wn. App. at 459.

¶32 To apply these principles here, we determine (1) whether the circumstances excused the injured workers'

failure to appeal L&I's wage rate determination before the 60 day appeal period expired and (2) whether these workers can show that they were vigilant in pursuing their rights after the appeal period had expired. *See Fields*, 112 Wn. App. at 459-60.

¶33 Here, L&I notified the injured workers that their wage rate calculation was based on their marital status and wages at the time of the injury. Thus, the workers could have deduced that the health care benefits were not included. As we stated above, L&I sufficiently disclosed to the workers the underlying basis for setting their compensation rates. Thus, the workers' equitable estoppel arguments fail.

¶34 Finally, we turn to arguments pertinent to the two workers who timely appealed. Adrian filed a timely appeal from L&I's 2002 wage rate order. He seeks past underpayments dating from his 1996 claim closure.

¶35 Adrian's argument fails because his August 1996 order was final and preclusive when L&I reopened his claim. *Marley*, 125 Wn.2d at 537-38.

¶36 Peterson also timely appealed L&I's revised wage order of February 19, 2002. L&I argues, however, that acting under RCW 51.28.040, it properly declined to extend his revised wage order to the date when he was first placed on the pension rolls and instead made it effective 60 days before his appeal.

¶37 Peterson was injured on September 3, 1998, and L&I issued a determinative wage rate order on December 4, 1998. On February 14, 2002, after being placed on the pension rolls effective April 27, 1999, he asked L&I to recalculate his wage rate to include his health care benefits. On February 19, 2002, L&I issued a revised wage order, but under RCW 51.28.040, made it effective only 60 days before the date L&I received Peterson's request. He appeals from this order, asserting that the recalculated wage rate should be effective April 27, 1999.

¶38 RCW 51.28.040 allows an increase of compensation "for periods of time up to sixty days prior to the receipt of

such application." L&I properly followed this statutory provision when it rejected Peterson's claim to extend his compensation beyond that period of time.

ATTORNEY FEES

¶39 The workers seek attorney fees and costs under RCW 51.52.130. As they do not prevail, we deny this request.

¶40 Affirmed.

VAN DEREN, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 159 Wn.2d 1004 (2007).