FILED
COURT OF APPEALS
DIVISION II

2014 JUN -5 AM 8:59

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSEPH CRABB, | No. 44343-1-II |
| Respondent, | PUBLISHED OPINION |
| v. | |
| DEPARTMENT OF LABOR & INDUSTRIES, | |
| Appellant. | |

BJORGEN, J — The Department of Labor and Industries (Department) appeals an order of summary judgment directing it to pay Joseph Crabb's workers' compensation benefits for 2011 at the maximum monthly amount for that year. Crabb began receiving these benefits in 2007. The statutory formula for calculating his benefits called for payments in excess of the maximum monthly amount, so the Department paid Crabb at the maximum between 2007 and 2010. In 2011, amendments to the workers' compensation statutes froze the annual cost of living adjustment (COLA) to benefit payments. Based on these amendments, the Department continued to pay Crabb at the 2010 maximum monthly rate when he sought benefits in 2011.

Crabb protested, eventually appealing to the superior court, which reversed an order by the Board of Industrial Insurance Appeals (Board) and directed the Department to pay his benefits at the maximum 2011 monthly amount. Concluding that the 2011 COLA suspension did not prevent payment of Crabb's benefits at the 2011 maximum, we affirm the superior court.

## FACTS

Crabb experienced a work-related injury to his left foot in 2007. He filed a claim for benefits, which the Department allowed. By statute, the Department calculates temporary total disability payments, the type of benefits Crabb received, using three factors measured at the time

of the accident: the worker's monthly wages, his or her marital status, and the number of the worker's dependent children. RCW 51.32.090(1), .060. At the time of his injury, Crabb made $8,917.92 per month, was unmarried, and had no children. Based on these factors, the statutory formula for calculating disability payments codified in RCW 51.32.090 and RCW 51.32.060 set Crabb's benefits at 60 percent of his monthly wages, or $5,350.57 per month. However, because RCW 51.32.090(9) capped the payment of temporary total disability payments at 120 percent of the average monthly state wage, Crabb was only entitled to payments of $4,258.40 per month for 2007, the year of his injury.

The effects of Crabb's injury persisted, and his claim remained open. In 2011 he filed claims for temporary total disability for the period of August 27, 2011 through October 21, 2011.

The COLA is given effect by RCW 51.32.075, which requires the Department to adjust temporary total disability payments each July to account for inflation. However, during a special session in 2011, the legislature eliminated the automatic COLA to workers' compensation benefits for that year. LAWS OF 2011, 1st Spec. Sess., ch. 37, §§ 202, 1101. The legislature did not, however, alter the statutory scheme for calculating benefits found in RCW 51.32.090(1) or for calculating the maximum monthly payment allowed by RCW 51.32.090(9). See LAWS OF 2011, 1st Spec. Sess., ch. 37, § 101.

Because of the suspension of the 2011 COLA before its effective date, July 1, the Department paid Crabb's 2011 claims at a monthly benefit rate of $ 4,714.30, the maximum monthly payment for 2010. Crabb wrote the Department and claimed that, under the benefit schedule for temporary total disability benefits established by RCW 51.32.090(1), adjusted for inflation by RCW 51.32.075, and capped by the maximum monthly payment provision found in

RCW 51.32.090(9), he should receive the maximum payment allowed in 2011, $4,816.20 per month. The Department rejected Crabb's claim, contending that the legislature's suspension of 2011's COLA prevented it from adjusting his payments upward.

Crabb appealed, and the parties contested the issue on stipulated facts before an industrial appeals judge (IAJ) of the Board. The IAJ accepted the Department's argument that, absent an automatic COLA, it had no mechanism to adjust Crabb's benefits and denied his appeal with a proposed decision and order. The Board denied Crabb's petition for review, adopting the IAJ's proposed decision and order as its own.

Crabb then appealed to the superior court contending that the provisions of RCW 51.32.090 entitled him to the maximum allowable monthly payment and that the COLA issue was irrelevant to that calculation. The Department again claimed that, absent some mechanism for adjusting Crabb's benefits, it could not do so, and it therefore could only pay at the 2010 cap level. Accepting Crabb's interpretation, the superior court granted summary judgment in his favor and ordered the Department to recalculate and pay Crabb benefits for the period at issue at the 2011 maximum monthly amount, interest on the deficiency, and costs and fees related to his appeal.

The Department appeals and seeks reversal of the summary judgment order in Crabb's favor and reinstatement of the Board's decision.

ANALYSIS

The Department contends that the superior court erred because (1) the legislature precluded any kind of increase in benefit payments for Crabb when it suspended the 2011 COLA and (2) even if Crabb could receive higher benefit payments, it lacked any mechanism to

implement an increase in payments. The Department's claims present questions of statutory interpretation that ultimately turn on whether the superior court correctly interpreted RCW 51.32.090 and RCW 51.32.075, the provisions establishing Crabb's benefit schedule, the maximum monthly payment allowed, and annual adjustments for inflation.

When we interpret a statute, we attempt to "ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We determine the legislature's intent through the plain meaning imparted by the text of the statutory provision at issue, as well as any related provisions that "disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11-12. Unless "the statute remains susceptible to more than one reasonable meaning" after this textual inquiry, the statute is unambiguous, our inquiry is over, and we must give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 12. If, however, the statute is susceptible to more than one reasonable interpretation after the plain meaning analysis, "the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Campbell & Gwinn*, 146 Wn.2d at 12 (citing, among other cases, *Cockle v. Dep't of Labor and Industries*, 142 Wn. 2d 801, 808, 16 P.3d 583 (2001)).

We review de novo an order for summary judgment, "engaging in the same inquiry as the trial court." *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 296 P.3d 800 (2013). Summary judgment is proper where "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Afoa*, 176 Wn.2d at 466. Because the parties agree on the facts, this appeal turns on our de novo review of the Department's interpretation of the

4

provisions of chapter 51.32 RCW. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996).

## I. THE STATUTORY BENEFIT SCHEME AND CRABB'S RATE OF BENEFIT PAYMENTS

Under RCW 51.32.090(1) workers experiencing temporary total disability "shall" receive benefit payments according to the same payment schedule as those receiving permanent total disability, although only "so long as the total disability continues." The payment schedule for workers with permanent total disability sets benefit payments as a variable percentage of the workers' average monthly wages, conditioned on the workers' marital status and number of dependent children at the time of the injury. RCW 51.32.060. For those, like Crabb, with no spouse or dependent children at the time of injury, RCW 51.32.060(1) and RCW 51.32.060 together require the Department to pay temporary total disability benefits at "[60] percent of [the worker's] wages." RCW 51.32.090(1)(g). The Department fixed Crabb's benefit schedule by order, correctly determining that the statutory scheme entitled him to 60 percent of his $8,917.92 average monthly wage, or $5,350.57.

RCW 51.32.075 codifies the legislature's attempt to deal with the problem of inflation in the context of worker's compensation payments. *See Dep't of Labor & Indus. v. Auman*, 110 Wn.2d 917, 920, 756 P.2d 1311 (1988). Between the years 1982 and 2010, this statute required the Department to make yearly adjustments to the injured worker's compensation by multiplying the payment schedule called for by RCW 51.32.090(1) by a fraction determined by dividing that year's average monthly salary by the average monthly salary of the year in which the claimant suffered his or her injury. Former RCW 51.32.075 (1983). In 2011, however, the legislature suspended the COLA increase for the year and adjusted the formula so that any adjustments to

benefits lag a year behind the current pace of inflation. LAWS OF 2011, 1st Spec. Sess., ch. 37, § 202 (codified as RCW 51.32.075).

The payments required by RCW 51.32.090(1) are also capped by a maximum monthly payment rate. RCW 51.32.090(9). As relevant here, the capping provision states that "[i]n no event shall the monthly payments provided in this section" exceed 120 percent of the average monthly wage in the state as computed under the provisions of RCW 51.08.018. RCW 51.32.090(9)(a). During the 2010 year, RCW 51.32.090(9) limited payments to $4,715.30 per month; for 2011 the provision restricted payments to a maximum of $4,816.20 per month.

## II. RCW 51.32.075 AND THE COLA FREEZE

The Department first claims the superior court erred by misinterpreting the effects of the legislature's suspension of the 2011 COLA. The Department argues that the suspension of the COLA precluded it from adjusting Crabb's benefits because the rise in the maximum payment amount allowed by RCW 51.32.090(9) is equal to the benefit increase that the COLA would have provided. Crabb contends that the amendments have no bearing on his claim. We find the statutory amendments ambiguous and, applying the canon of liberal construction, hold that the Department erred.

The Department offers a reasonable interpretation of the 2011 amendments to RCW 51.32.075. As the Department argues, both the maximum monthly benefit payment and the COLA are functions of the average monthly wage of Washington workers. *See* RCW 51.32.075, .090(9). As a result, the yearly change to the maximum benefit payment is identical to the yearly COLA. Given this, the legislature's suspension of 2011's COLA could indicate intent to prevent increases to benefit payments like the one Crabb seeks.

However, Crabb also offers a reasonable interpretation of the statutory scheme. As Crabb notes, while the legislature amended RCW 51.32.075, it did not amend RCW 51.32.090(9). The Department's position that the 2011 amendments to RCW 51.32.075 suspended benefit increases for workers at the statutory maximum requires us to view them as impliedly amending RCW 51.32.090(9). We disfavor such implied amendments, and we presume the legislature knows this. *Wilbur v. Dep't of Labor & Indus.*, 38 Wn. App. 553, 559, 686 P.2d 509 (1984). Crabb thus reasonably argues that the legislature did not intend to preclude the benefit raise he seeks here when it amended RCW 51.32.075 but not RCW 51.32.090(9).

Since both parties offer reasonable, conflicting interpretations of the text and purpose of the statutory scheme at issue, we find the scheme ambiguous. Interpreting the provision requires us to turn to extrinsic aids to ascertain the legislature's intent. The Department invokes several canons of construction that it claims support its interpretation; Crabb invokes only one, the doctrine of liberal construction. We find the canon invoked by Crabb to be dispositive, especially in light of the differing roles of the monthly cap and the COLA.[1]

The legislature has declared that the provisions of Title 51 RCW "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010; *Cockle*, 142 Wn.2d at 811. The Supreme Court has commanded that this legislative directive requires that we resolve all reasonable doubt in favor of the injured worker. *See, e.g., Clauson v. Dep't of*

---

[1] We acknowledge some uncertainty in the case law as to whether rules of liberal construction are to be consulted in determining whether a statute is ambiguous or whether they are applied after ambiguity has been found. *Compare Jametsky v. Olson*, 179 Wn.2d 756, 764-65, 317 P.3d 1003 (2014) with *Cockle*, 142 Wn.2d at 811. Because *Cockle* applied the specific rule of liberal construction for workers' compensation statutes only after ambiguity had been found, we do the same.

7

*Labor & Indus.*, 130 Wn.2d 580, 586, 925 P.2d 624 (1996). Because Crabb makes at least a reasonable case for his entitlement to the higher benefit rate, we must resolve the Department's appeal in his favor, despite the canons of construction invoked by the Department. *See, e.g., Cockle*, 142 Wn.2d at 811-13.

The voice of the canon of liberal construction in this setting is strengthened by the differing purpose and role of the statutory limitations under examination. The monthly cap is simply a device to hold benefits, however calculated, below a set maximum. It applies whatever the mix of factors entering into the benefit calculation and whatever the contribution of a COLA to those benefits. The COLA on the other hand, increases benefits up to the monthly cap. The annual adjustment to the monthly cap, therefore, is not a COLA, even though their amounts may be the same in an individual year. Here, the raising of the cap simply allows Crabb to enjoy more of the benefits the statute otherwise would grant him, benefits which do not include the suspended COLA for 2011. Since the cap increases are not a COLA, it would offend the canon of liberal construction even more to deny Crabb the cap increase simply because it was the same amount as the suspended COLA.

The Department attempts to overcome the legislature's directive that we construe the provisions of Title 51 RCW liberally by arguing that liberal construction cannot overcome the canon against interpretations producing absurd results. *Senate Republican Campaign Comm'n v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997); *Bird-Johnson v. Dana Corp.*, 119 Wn.2d 423, 427, 833 P.2d 375 (1992). The Department claims that Crabb's interpretation allows higher paid workers to receive what amounts to a COLA for 2011 while

less well paid workers do not and labels this a "strained and unrealistic" result. Br. of Appellant at 26. There are two problems with the Department's argument.

First, the Department's interpretation produces an absurdity of its own. The Department asks us to hold on one hand that Crabb's rate of payment is determined by the maximum payment provision, but then to hold on the other hand that changes to the maximum payment provision have no effect on Crabb's rate of payment. This inconsistency is difficult to accept.

Second, we cannot say that Crabb's interpretation is absurd, as it accords with prior legislative amendments to chapter 51.32 RCW. Workers' compensation payments, like the ones made under RCW 51.32.090(1), exist to compensate injured workers "based not on an arbitrarily set figure, but rather on his or her actual 'lost earning capacity.'" *Cockle*, 142 Wn.2d at 811 (quoting *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997)). In fact, the legislature amended Title 51 to make workers' compensation payments dependent on wages, rather than set payments for particular types of injuries, precisely to more accurately reflect lost wages. *Cockle*, 142 Wn.2d at 810-11. Because Crabb's lost wages resulted in benefits that exceeded the maximum monthly payment, allowing Crabb to receive a larger benefit payment when the maximum monthly payment is increased comports with the goal of better compensating Crabb for his lost earning capacity.

The Department also argues that we should defer to its interpretation of RCW 51.32.090 and that we should accept its interpretation because it gives effect to all the statutory language. We generally defer to the Department's interpretation of Title 51 RCW. *Littlejohn Constr. Co. v. Dep't of Labor & Indus.*, 74 Wn. App. 420, 423, 873 P.2d 583 (1994). This deference has limits however, and where the Department's reading "conflicts with a statutory mandate," deference is

No. 44343-1-II

"'inappropriate.'" *Cockle*, 142 Wn.2d at 812 (quoting *Dep't of Labor & Indus. v. Landon*, 117 Wn.2d 122, 127, 814 P.2d 626 (1991)). For the reasons set out above, the Department's reading conflicts with applicable statutory mandates, even giving that reading its due deference. Further, the Department's reading contravenes the express language of RCW 51.32.090, which provides that the worker "shall" receive benefits according to the statutory schedule during his disability. Only by allowing Crabb to benefit from increases in the monthly cap can this requirement be met. Denying him that benefit because the COLA was suspended reads RCW 51.32.090(1) right out of the statutory scheme. For this reason also, we decline to follow the Department's construction of RCW 51.32.090.

### III. STATUTORY MECHANISMS FOR BENEFIT INCREASES

The Department next contends that the superior court erred by ordering it to increase Crabb's benefits because it has no means to do so. The Department claims that adjustments must be made using an applicable mechanism and contends that without the COLA it had no mechanism applicable to Crabb because the maximum monthly benefit cap does not, in and of itself, provide a mechanism to increase payments. We disagree.

As noted above, the Department used the factors prescribed by RCW 51.32.090(1) to calculate Crabb's benefit schedule. Because the Department correctly fixed Crabb's benefit schedule in excess of the maximum monthly payment allowed by RCW 51.32.090(9), increases in the maximum monthly payment operate as a mechanism to increase Crabb's benefit payments. *See* RCW 51.32.090(1), (9). When the maximum monthly payment rises, Crabb's benefit payments are necessarily reduced less. This adjustment inheres in the raising of the monthly cap, and no additional legal mechanism is necessary to effect it.

10

Nevertheless, the Department cites our opinion in *Hyatt v. Department of Labor and Industries*, 132 Wn. App. 387, 132 P.3d 148 (2006), and Division One's similar opinion in *Lynn v. Department of Labor and Industries*, 130 Wn. App. 829, 125 P.3d 202 (2005), claiming that they support its contention that it needed a statutory mechanism to increase Crabb's benefit payments. Those cases stand for the proposition that once the Department fixes a claimant's benefit schedule by final order, principles of res judicata require the claimant to show some kind of change in personal circumstances to warrant recalculation of that schedule. *Hyatt*, 132 Wn. App. at 396-400; *Lynn*, 130 Wn. App. at 834-40. Crabb is not seeking a recalculation of his benefit schedule. He is literally seeking to compel the Department to pay him what it initially decided it should.[2] Res judicata cannot justify the Department's refusal to pay Crabb according to the factors it fixed by order.

## IV. ATTORNEY FEES

The superior court awarded Crabb attorney fees and costs. Crabb devoted a portion of his opening brief to the attorney fees issue and asks that we award appellate attorney fees based on RCW 51.52.130, which allows for such fees. Crabb has satisfied the requirements of RAP 18.1. Because we affirm the trial court's summary judgment order, we affirm its award of fees and costs to Crabb. We also award Crabb fees on appeal, in an amount to be set by a commissioner of our court.

---

[2] The Department points to several orders in the record and claims that these fix Crabb's benefit payments at the 2010 maximum monthly payment rate. These orders fix Crabb's payments at those levels for set periods of time consistent with the provisions of RCW 51.32.090(9). Again, the Department fixed Crabb's benefit schedule according to RCW 51.32.090(1). The Department must pay him according to that schedule as modified by the provisions of RCW 51.32.090(9), which allowed for a larger monthly rate of payment for the period of time at issue here.

11

No. 44343-1-II

CONCLUSION

The legislature's command that we construe the provisions of chapter 51 RCW liberally in favor of injured workers, along with the different purpose and role of the monthly benefit cap and the COLA, requires that we resolve the Department's appeal in Crabb's favor. We affirm the superior court's grant of summary judgment.

Bjorgen, A.C.J.

BJORGEN, J.

We concur:

WORSWICK, J.

JOHANSON, C.J.

12